```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - X
JOANN D'ANGELO-FENTON,                    :
                                                        ECF CASE
                        Plaintiff,        :

            - against -                   :   06 Civ. 0163 (WCC)

THE TOWN OF CARMEL; THE TOWN OF CARMEL     :
POLICE DEPARTMENT; LIEUTENANT BRIAN                    OPINION
KARST, SERGEANT KENNETH SCHMITT, POLICE    :   AND ORDER
OFFICER PAUL O'CONNOR, previously
identified as unknown individual          :
officers of the Town of Carmel Police
Department; JOHN DOE OFFICERS 4-10, the    :
names being fictitious and presently
unknown, all of whom are named            :
individually and in their capacity as
employees of the Town of Carmel and the    :
Town of Carmel Police Department; and
THE JOURNAL NEWS,                         :

                        Defendants.       :
- - - - - - - - - - - - - - - - - - - - X
```

**A P P E A R A N C E S :**

LAW OFFICES OF GAMBINO & MULVANEY, P.C.
**Attorneys for Plaintiff**
222 Church Street
Poughkeepsie, New York 12601

THOMAS M. GAMBINO, ESQ.

     Of Counsel

CRONIN & BYCZEK, LLP
**Attorneys for Defendants The Town
of Carmel, The Town of Carmel
Police Department, Lieutenant
Brian Karst, Sergeant Kenneth
Schmitt and Police Officer Paul
O'Connor**
1981 Marcus Avenue, Suite 227
Lake Success, New York 11042

CHRISTOPHER F. BELLISTRI, ESQ.
DOMINICK REVELLINO, ESQ.

     Of Counsel

**A P P E A R A N C E S :   (continued)**

SATTERLEE STEPHENS BURKE & BURKE
  LLP
**Attorneys for Defendant**
  **The Journal News**
230 Park Avenue
New York, New York 10169

ROBERT M. QCALLAGY, ESQ.
MARK A. FOWLER, ESQ.
BENJAMIN MEANS, ESQ.

Of Counsel

**CONNER, Senior D.J.:**

Plaintiff Joann D'Angelo-Fenton brings this action pursuant to 42 U.S.C. §§ 1983 and 1985 and various state law provisions, against defendants, the Town of Carmel (the "Town"), the Town of Carmel Police Department (the "Department"), Lieutenant Brian Karst, Sergeant Kenneth Schmitt, Officer Paul O'Connor and seven unidentified officers of the Department (collectively, the "Officers")[1] and The Journal News (the "Newspaper").  The allegations against the Town Defendants stem from their actions following an automobile accident in which plaintiff was involved, at which time she was alleged to have been driving while intoxicated.  Following the investigation, the Newspaper issued a story about the incident, which plaintiff contends constituted defamation.[2] Defendants moved to dismiss the complaint in its entirety pursuant to FED. R. CIV. P. 12(b)(6). Specifically, the Town Defendants contend that: (1) they are entitled to qualified immunity for their

---

[1] We refer to the Town, the Department and the Officers collectively as the "Town Defendants."

[2] Plaintiff's thirteen-count Amended Complaint alleges the following claims: (1) conspiracy to violate her constitutional rights in violation of 28 U.S.C. § 1983 on the part of the Town Defendants; (2) false arrest, unlawful search and seizure and malicious prosecution in violation of 28 U.S.C. § 1983 by the Town Defendants; (3) "supervisory liability and failure to intercede" in violation of 28 U.S.C. § 1983 by the Town Defendants; (4) infringement of plaintiff's First and Fourteenth Amendment rights in violation of 28 U.S.C. § 1983 by the Town Defendants; (5) conspiracy to interfere with plaintiff's "rights and privileges and equal protection of the law" in violation of 28 U.S.C. § 1985 by the Town Defendants; (6) failure to screen, hire, train and supervise its officers in violation of 28 U.S.C. § 1983 by the Town and the Department; (7) negligent and intentional infliction of emotional distress in violation of New York State law by the Town Defendants; (8) "respondeat superior" by the Town and the Department for the tortious acts of the Officers; (9) false arrest and imprisonment in violation of New York State law by the Officers; (10) *prima facie* tort in violation of New York State law by the Officers; (11) negligent hiring of the Officers in violation of New York State law by the Town and the Department; (12) slander and libel *per se* in violation of New York State law by the Town, the Department, the Officers and the Newspaper; and (13) slander and libel in violation of New York State law by all defendants.  (*See generally* Am. Complt.)

1

good faith, official actions; (2) plaintiff's malicious prosecution claim fails as a matter of law because no criminal proceeding was commenced against her; (3) plaintiff's arrest was lawful because it was supported by probable cause; (4) plaintiff fails to state a claim for conspiracy under 28 U.S.C. § 1985 because she fails to allege class-based discrimination; and (5) plaintiff's state law claims are meritless and should be dismissed for the same reasons that their federal claims must fail.  The Newspaper argues that it is immune from suit for defamation pursuant to N.Y. CIV. RIGHTS LAW § 74.[3]  Because the Town Defendants have submitted sixteen exhibits in support of their motion to dismiss, which, although instructive, could not be considered when ruling on such a motion, we noticed the parties that the Court would treat the motion as one for summary judgment pursuant to FED. R. CIV. P. 56, and invited them to submit additional relevant materials for our consideration.[4]  For the reasons that follow defendants' motions are granted.

## BACKGROUND

---

[3] N.Y. Civil Rights Law § 74 provides:

> A civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding, or for any heading of the report which is a fair and true headnote of the statement published.

> This section does not apply to a libel contained in any other matter added by any person concerned in the publication; or in the report of anything said or done at the time and place of such a proceeding which was not a part thereof.

[4] FED. R. CIV. P. 12 provides, in pertinent part:

> If, on a motion . . . to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

2

On January 9, 2005, plaintiff was involved in a serious motor vehicle accident, in which she crossed over the double yellow line into oncoming traffic, striking the guardrail and causing another vehicle to impact her own.[5]  Emergency medical and police personnel responded to the accident. (Am. Complt. ¶¶ 17-19.) Although plaintiff was seated in the driver's seat with her seatbelt fastened, she told responding emergency medical technician Laura Smith that she was not the driver of the vehicle.  (Smith Aff.) Smith, who first examined plaintiff, stated that she detected the scent of alcohol on plaintiff's breath.  (*Id.*) Smith related this concern to a paramedic at the scene, Edward Campion, who instructed the ambulance driver to notify police.  (*Id.*; Campion Aff. at 2.) Plaintiff admitted to Campion that she had consumed wine with dinner.  (Am. Complt. ¶¶ 17-19.)  Following her extrication from the vehicle, plaintiff was taken to a nearby hospital for emergency treatment. (*Id.*) At the hospital, defendant O'Connor, at the direction of defendant Schmitt, arrested plaintiff for driving while intoxicated.  (*See id.* ¶¶ 33-35.) Following the arrest, O'Connor and Schmitt seized a sample of plaintiff's blood, in order to test it for the presence of alcohol.  (*See id.* ¶¶ 35-37.) Plaintiff alleges that she did not consent to the taking of her blood. (*Id.*)

Following the events of January 9, 2005, plaintiff was convicted of a traffic infraction in connection with the accident, but was never prosecuted for driving while intoxicated.[6]  (*Id.* at ¶¶ 28-

---

[5] We take judicial notice of the fact that plaintiff was convicted of violating N.Y. VEH. & TRAF. LAW § 1126(a) for crossing the double yellow line demarcating the road as a "no passing" zone, as the Town defendants have provided the Court with a copy of the certificate of disposition. (*See* Town Defs. Mem. Supp. Mot. Dismiss Ex. O.) FED. R. EVID. 201(b) provides that "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned."  Plaintiff's conviction for the traffic infraction is such a fact.

[6] Analysis of plaintiff's blood revealed that its alcohol content did not exceed the legal limit. (Town Defs. Mem. in Supp. Summ. J., Ex. N.)

29; Town Defs. Mem. Supp. Mot. Dismiss, Ex. O.) Relying upon information supplied by the Department, the Newspaper published an article about plaintiff's accident.  (Am. Complt. ¶¶ 19-24.) In the article, the Newspaper indicated that plaintiff had been intoxicated and that "[p]olice had charged [plaintiff] with driving while intoxicated, a misdemeanor." (*Id.* at ¶ 19.)  Both statements were false.  Plaintiff subsequently filed the present Complaint.

Plaintiff now alleges widespread and pervasive wrongdoing on the part of the Town and the Department.  Namely, plaintiff contends that both entities: (1) maintained official or unofficial policies of permitting the unlawful seizure of evidence; (2) failed to implement proper training and supervision protocols to ensure that police personnel comply with search and seizure law; and (3) failed to discipline or terminate officers, or take any other remedial measures to prevent recurring violations of the law, despite having received complaints about officer misconduct.  (*See id.* ¶¶ 43-48.)

## DISCUSSION

Summary judgment may be granted where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 247-50 (1986).  A fact is material only if, based on that fact, a reasonable jury could find in favor of the nonmoving party.  *Anderson*, 477 U.S. at 248. The burden rests on the movant to demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In deciding whether summary judgment is appropriate, the court resolves all ambiguities and draws all permissible factual inferences against the movant.[7]  *See Anderson*, 477

_____

[7] Unless otherwise indicated, citations to affidavits submitted by defendants reflect information that is uncontested by plaintiff.

U.S. at 255.  To defeat summary judgment, the nonmovant must go beyond the pleadings and "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The Court's role at this stage of the litigation is not to decide issues of material fact, but to discern whether any exist.  *See Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1224 (2d Cir. 1994).  Nevertheless, as one court explained:

> [S]ummary judgment must be granted against a party in instances when such party fails to adequately establish an essential element on which it bears the burden of proof. . . .  The non-moving party may not rest upon unsubstantiated allegations, conclusory assertions or mere denials of the adverse party's pleading, but must set forth and establish specific facts showing that there is a genuine issue for trial. . . . A metaphysical or other whimsical doubt concerning a material fact does not establish a genuine issue necessitating a trial. . . .  The mere existence of a scintilla of evidence supporting the non-movant's case is insufficient to defeat a motion for summary judgment.

*Brooks v. Di Fasi*, No. 93-CV-0197E, 1997 U.S. Dist. LEXIS 11162, at *6-7 (W.D.N.Y. July 30, 1997) (citations omitted; internal quotation marks omitted).

I.    **Plaintiff's Constitutional and Related State Tort Claims**

    A.    **False Arrest and Unlawful Search and Seizure Under § 1983 and New York State Law**

The Second Circuit explained in *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995), that to prevail on a claim for false arrest under New York law, a plaintiff must demonstrate that: (1) he was intentionally confined; (2) he was conscious of the confinement; (3) he was confined without consent; and (4) no privilege justified his confinement.  "A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause . . . is substantially the same as a claim for false arrest under

New York law. . . ." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citations omitted).  Probable cause constitutes a complete defense to a claim of false arrest under both § 1983 and New York law, *id.*, and, on at least one occasion, the Second Circuit has required that a plaintiff affirmatively plead facts giving rise to an inference that police lacked probable cause to place the plaintiff under arrest.  *See Coyle v. Coyle*, 153 F. App'x 10, 11 (2d Cir. 2005) (dismissing complaint because plaintiff "failed to allege any facts supporting his claim that the police officers who arrested him lacked probable cause.").

In the present case, although plaintiff has alleged that the Officers concocted an elaborate plot to falsely accuse her of driving while intoxicated, the evidence overwhelmingly indicates that, at the time they confronted her in the hospital, the Officers had probable cause to believe plaintiff had been driving while intoxicated.  Probable cause to arrest exists when the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested.  *See Dunaway v. New York*, 442 U.S. 200, 208 n.9 (1979); *see also Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 414 (2d Cir. 1999).  The existence of probable cause is determined objectively—the officer's subjective belief at the time of arrest is irrelevant—based on the totality of the circumstances.  *See Illinois v. Gates*, 462 U.S. 213, 230-32 (1983); *Martinez v. Simonetti*, 202 F.3d 625, 633 (2d Cir. 2000) (citing *Wilson v. Layne*, 526 U.S. 603, 614 (1999)).  Therefore, a probable cause determination must be made by considering what the officer knew at the time of the arrest and whether the officer was reasonable in relying on that knowledge.  *See Fox v. City of New York*, No. 03 Civ. 2268, 2004 U.S. Dist. LEXIS 6844, at *14-15 (S.D.N.Y. Apr. 20, 2004).

The Officers relied on statements made to them by emergency medical personnel who

6

directly examined plaintiff and reported that she: (1) was involved in an automobile accident, in which she crossed into oncoming traffic; (2) admitted that she had consumed alcohol prior to the accident; and (3) smelled of alcohol when she was extricated from the vehicle. Certainly, such information would warrant a reasonable officer to believe that the offense of driving while intoxicated had been committed.[8]  *Cf. Coons v. Casabella*, 284 F.3d 437, 441 (2d Cir. 2002) (probable cause to believe that driver was intoxicated where he "told the officer that he had driven his pickup truck off the road and into a telephone pole, and admitted that prior to the accident he had consumed 'three beers, maybe three, three and a half' beers and that he had not consumed any alcohol after the accident."); *People v. Ladd*, 89 N.Y.2d 893, 896, 675 N.E.2d 1211, 1213, 653 N.Y.S.2d 259 (1996) (finding "reasonable grounds" to believe defendant had been driving while intoxicated where a driver had consumed alcohol, had driven across the center lane in fog at a high speed, and had collided head-on with another car.").

Plaintiff incorrectly states that Smith's affidavit is not signed,[9] and disputes the accuracy of Campion's statement in his affidavit that plaintiff admitted that she consumed "a couple" of glasses of wine. The Court, however, need not examine the accuracy of these statements in determining whether probable cause existed. Rather, the pertinent question is whether the Officers were justified

---

[8] Although we do not rely on it in finding that the Officers had probable cause to believe that plaintiff had driven while intoxicated, we reiterate that the responding emergency personnel reported that, although plaintiff was seatbelted into the driver's seat of the vehicle and had to be extricated therefrom, she claimed that she was not the driver of the automobile. Clearly, such a patently false statement could be construed as an attempt to deceive authorities, which also supports a finding of probable cause. *See United States v. Graham*, 563 F. Supp. 149, 151 (W.D.N.Y. 1983) (false statements made to police, *inter alia*, supported finding of probable cause for warrantless search of person making such statements).

[9] Although the signature line of Smith's affidavit is blank, her signature appears in the body of the affidavit at the conclusion of her written statement.  (*See* Smith Aff.)

in *relying* on those statements, regardless of their actual truth or falsity.  "[I]t is well-established that a law enforcement official has probable cause to arrest if he received his information from some person . . . who it seems reasonable to believe is telling the truth."  *Miloslavsky v. AES Eng'g Soc'y, Inc.*, 808 F. Supp. 351, 355 (S.D.N.Y. 1992), *aff'd*, 993 F.2d 1534 (2d Cir. 1993); *see also Caldarola v. Calabrese*, 298 F.3d 156, 163 (2d Cir. 2002) ("In the case of an identified bystander with no apparent motive to falsify . . . the information [provided] has a peculiar likelihood of accuracy.") (internal quotation marks omitted).  Under the circumstances, we can discern no reason why the Officers would not have reasonably relied on the information that they received from the emergency medical personnel, the first responders to arrive at the scene of the accident.[10]  Accordingly, we conclude that the Officers had probable cause to arrest plaintiff and obtain a sample of her blood in order to test it for the presence of alcohol.  Plaintiff's false arrest claim must therefore fail.  *See Weyant*, 101 F.3d at 852 ("The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest . . . [regardless of] whether that action is brought under state law or under § 1983.").

Because we have determined that the Officers had probable cause to arrest plaintiff, her unlawful search and seizure claim cannot stand.  The United States Supreme Court has long maintained that the procurement of a blood sample constitutes a lawful search incident to arrest for driving while intoxicated.  *See Schmerber v. California*, 384 U.S. 757, 770-71 (1966) ("[T]he percentage of alcohol in the blood begins to diminish shortly after drinking stops, as the body functions to eliminate it from the system . . . .  Given these special facts, we conclude that the

---

[10] Indeed, defendant Karst submitted an affidavit stating that he and his fellow officers relied on statements made by emergency medical responders in forming their belief that plaintiff had driven while intoxicated.  (Karst Aff. ¶¶ 3-10.) We have no reason to doubt the veracity of his statements.

attempt to secure evidence of blood-alcohol content in this case was an appropriate incident to petitioner's arrest.").

Furthermore, we note that, although plaintiff contends that she did not consent to the seizure of her blood, N.Y. VEH. & TRAF. LAW § 1194(2)(a) provides, in pertinent part: "Any person who operates a motor vehicle in this state shall be deemed to have given consent to a chemical test of one or more of the following: breath, blood, urine, or saliva, for the purpose of determining the alcoholic and/or drug content of the blood . . . ." Police are not required to obtain consent prior to the test's administration. Rather, as the statute mandates, plaintiff consented to the blood test simply by operating a motor vehicle within the state of New York. A motorist is required to affirmatively refuse to submit to a chemical test in order to invoke the statutory right of refusal provided in N.Y. VEH. & TRAF. LAW § 1194(2)(b)(1); *see People v. Kates*, 53 N.Y.2d 591, 596, 428 N.E.2d 852, 444 N.Y.S.2d 446 (1981) ("It is not necessary that a person be given the opportunity to revoke his [statutorily-mandated] consent. The only reason the opportunity to revoke is given is to eliminate the need for the use of force by police officers if an individual in a drunken condition should refuse to submit to the test."). In the present case, we have no indication that plaintiff expressly refused to consent to the test.

**B.    Malicious Prosecution Under § 1983 and New York State Law**

Plaintiff's malicious prosecution claims are doomed to suffer a similar fate, for it is equally well established that a finding of probable cause defeats a claim for malicious prosecution. *See Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002) ("In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the

Fourth Amendment . . . and establish the elements of a malicious prosecution claim under state law . . . . To establish a malicious prosecution claim under New York law, a plaintiff must show that a proceeding was commenced or continued against him, with malice and without probable cause, and was terminated in his favor.") (citations omitted; internal quotation marks omitted).  As stated previously, the Officers had probable cause to detain plaintiff and, "[i]n the absence of some indication that the authorities became aware of exculpatory evidence between the time of the arrest and the subsequent prosecution that would undermine the probable cause which supported the arrest, no claim for malicious prosecution may lie."  *Williams v. City of New York*, No. 02 Civ. 3693, 2003 U.S. Dist. LEXIS 19078, at *16 (S.D.N.Y. Oct. 23, 2003).

Plaintiff has presented no such evidence and, indeed, faces a more fundamental problem, as no criminal proceeding for driving while intoxicated was commenced against her.  Although the Officers presented the evidence that they collected to prosecuting attorneys, no criminal proceedings were commenced, save for those relating to plaintiff's traffic violation, of which she was convicted. Plainly, therefore, no claim for malicious prosecution can lie.

### C.    Conspiracy to Violate Constitutional Rights Under § 1983

In order to prove a conspiracy claim under § 1983, a plaintiff must demonstrate: "(1) an agreement between two or more state actors or a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."  *Bussey v. Phillips*, 419 F. Supp. 2d 569, 586 (S.D.N.Y. 2006).  Accordingly, to succeed in a § 1983 conspiracy claim, a plaintiff must prove not only a conspiracy, but an *actual deprivation* of a constitutional right.  *See id.*; *see also Singer*, 63 F.3d at 119 ("The district court dismissed this

10

claim on the ground that a plaintiff alleging a § 1983 conspiracy claim must prove an actual violation of constitutional rights.  In this we agree.  Section 1983 is only a grant of a right of action; the substantive right giving rise to the action must come from another source.  Therefore, although the pleading of a conspiracy will enable a plaintiff to bring suit against purely private individuals, the lawsuit will stand only insofar as the plaintiff can prove the *sine qua non* of a § 1983 action: the violation of a federal right.").  As demonstrated above, our conclusion that the Officers' had probable cause to detain plaintiff and procure a sample of her blood means that this claim must fail.  Even if we assume the accuracy of plaintiff's conspiracy allegations, a § 1983 conspiracy claim necessitates proving "an actual deprivation of a constitutional right," *Dean Tarry Corp. v. Friedlander*, 826 F.2d 210, 213 (2d Cir. 1987), which, in the present case, plaintiff cannot prove.[11]

### D.   Conspiracy to Violate Constitutional Rights Under § 1985

Plaintiff's § 1985 claim is similarly deficient.  42 U.S.C. § 1985(3) provides, in pertinent part:

> If two or more persons . . . go in disguise on the highway or on the premises of another, for the purpose of depriving . . . any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of

---

[11] Plaintiff also alleges that the Town Defendants "presented their case to the Putnam County District Attorney's Office which Office did not pursue prosecution due to the lack of evidence against the [p]laintiff.  The Defendants then forum shopped and obtained a Special Prosecutor who also declined prosecution due to the lack of evidence against the [p]laintiff."  (Pl. Mem. Opp. Mot. Dismiss at 3.)  A review of the supplemented record reveals that, contrary to plaintiff's accusations, Putnam County District Attorney Kevin Wright disqualified himself from prosecution of plaintiff because of a conflict of interest, namely that his wife was plaintiff's landlord, and instead appointed a special prosecutor to address the matter.  (Johnson Aff. ¶¶ 1-3.)

having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

The Second Circuit has explained that

[t]o prevail on a § 1985(3) claim, a plaintiff must prove that defendants: (1) engaged in a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons the equal protection of the laws, or the equal privileges and immunities under the laws; (3) acted in furtherance of the conspiracy; and (4) deprived such person or class of persons the exercise of any right or privilege of a citizen of the United States.

*New York State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1358 (2d Cir. 1989).  As the fourth element illustrates, it is not enough to merely allege a conspiracy to infringe one's constitutional rights.  Rather, as with a § 1983 conspiracy claim, *actual infringement* of a constitutional right is required.  Accordingly, as set forth above, our determination that the Officers' actions were supported by probable cause is fatal to plaintiff's § 1985 claim.


**E.      Deprivation of First and Fourteenth Amendment Rights Under § 1983**

We next address plaintiff's claim that the Town Defendants' conduct deprived her of her First and Fourteenth Amendment rights in violation of § 1983.  In support of this claim, plaintiff alleges that the Town Defendants "engaged in a cover-up in order to conceal the wrongdoing and unlawful conduct taken against [p]laintiff . . . ."  (Am. Complt. ¶ 60.) Plaintiff's claim that such actions offended the First Amendment is mystifying, as plaintiff has not averred that her right to freedom of speech was stifled or, indeed implicated, in any manner whatsoever.  To establish a First Amendment claim under § 1983, plaintiff must demonstrate that: (1) she has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by her

exercise of that right; and (3) defendants' actions effectively chilled the exercise of plaintiff's First Amendment right. *See Estate of Morris v. Dapolito*, 297 F. Supp. 2d 680, 692 (S.D.N.Y. 2004) (Conner, J.); *see also Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001). In the present case, plaintiff has not alleged a single one of these elements.

We now turn to plaintiff's Fourteenth Amendment claim, which we construe as alleging a violation of her right to due process of law. In order to succeed on a claim of deprivation of procedural due process, the plaintiff must establish that the state action deprived him of a protected property or liberty interest. *White Plains Towing Corp. v. Patterson*, 991 F.2d 1049, 1060-61 (2d Cir. 1993). Plaintiff has pointed to no constitutionally protected liberty interests other than her rights to freedom from false arrest, unreasonable search and seizure and malicious prosecution, which, as we have previously addressed, were not violated.[12] Although plaintiff's Fourteenth Amendment claim is hardly the model of clarity, it also appears to allege that, as a result of the Town Defendants' promulgation of reports that she had driven while intoxicated, plaintiff suffered damage to her reputation and detrimental employment action. Clearly, the Due Process Clause does not protect plaintiff's right to remain free from negative action in the context of purely private-sector employment. This allegation, absent an effect on a constitutionally protected interest, does not state a violation of § 1983. "A free-standing defamatory statement made by a state official about an employee is not a constitutional deprivation. Instead, it is properly viewed as a state tort of defamation." *Donato v. Plainview-Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 630 (2d Cir. 1996); *see also Silverman v. Barry*, 845 F.2d 1072, 1080 (D.C. Cir. 1988) ("Only a substantial infringement

---

[12] To the extent that plaintiff's complaint can be construed as claiming that she has a constitutional right to be free from a governmental plot to "frame" her for unlawful conduct, our prior finding that probable cause supported plaintiff's arrest renders it untenable.

of state law prompted by personal or group animus, or a deliberate flouting of the law that *trammels significant personal or property rights*, qualifies for relief under § 1983. . . .  Inadvertent errors, honest mistakes, agency confusion, even negligence in the performance of official duties, do not warrant redress under this statute.") (emphasis added; citations omitted); *Collins v. W. Hartford Police Dep't*, 380 F. Supp. 2d 83, 94 (D. Conn. 2005) ("[D]efamation, by itself, is a tort actionable under the laws of most States, but not a constitutional deprivation . . . .") (citing *Siegert v. Gilley*, 500 U.S. 226, 233 (1991)).


### F.        The Town and the Department's Supervisory Liability for the Officers' Actions

Plaintiff also claims that the Town and the Department are subject to supervisory liability under 42 U.S.C. § 1983 for implementing a policy, practice or custom that facilitated the alleged constitutional violations.  We have already addressed the merits of the alleged underlying constitutional violations and, as set forth previously, found them unpersuasive.  Because "it is fundamental that [§] 1983 creates no independent, substantive constitutional rights but rather is a vehicle for enforcing such rights," we need not address plaintiff's claims because no violation has occurred.[13]  *Yap v. Oceanside Union Free Sch. Dist.*, 303 F. Supp. 2d 284, 297 (E.D.N.Y. 2004); *David v. N.Y.P.D. 42nd Precinct Warrant Squad*, No. 02 Civ. 2581, 2004 U.S. Dist. LEXIS 16678, at *20 (S.D.N.Y. Aug. 23, 2004) ("An obvious precondition to a successful § 1983 claim against a municipality is an underlying constitutional violation.").

---

[13] Plaintiff's state law "respondeat superior" and related claims fail for the same reason, as "there can be no vicarious liability on the part of the employer if the employee himself is not liable . . . ." *Karaduman v. Newsday, Inc.*, 51 N.Y.2d 531, 545-46, 416 N.E.2d 557, 435 N.Y.S.2d 556 (1980).

G.      **Plaintiff's Claims for Intentional and Negligent Infliction of Emotional Distress**

We next address plaintiff's claims against the Town Defendants for both intentional and

negligent infliction of emotional distress.  The tort of intentional infliction of emotional distress "has

four elements: [(1)] extreme and outrageous conduct; [(2)] intent to cause, or disregard of a

substantial probability of causing, severe emotional distress; [(3)] a causal connection between the

conduct and injury; and [(4)] severe emotional distress."  *Howell v. N.Y. Post Co., Inc.*, 81 N.Y.2d

115, 121, 612 N.E.2d 699, 596 N.Y.S.2d 350 (1993).  We note at the outset that, under New York

law, "public policy bars claims sounding in intentional infliction of emotional distress against a

governmental entity."  *Wyllie v. Dist. Attorney of County of Kings*, 2 A.D.3d 714, 720, 770 N.Y.S.2d

110 (2d Dep't 2003) (citing *Dillon v. City of New York*, 261 A.D.2d 34, 41, 704 N.Y.S.2d 1 (1st

Dep't 1999); *Lauer v. City of New York*, 240 A.D.2d 543, 544, 659 N.Y.S.2d 57 (2d Dep't 1997);

*Wheeler v. State*, 104 A.D.2d 496, 498, 479 N.Y.S.2d 244 (2d Dep't 1984)).  Moreover, plaintiff

fails even to allege that the Officers committed "extreme and outrageous conduct, which so

transcends the bounds of decency as to be regarded as atrocious and intolerable in a civilized

society," as is required to sustain her claim.[14]  *Wyllie*, 2 A.D.3d at 720.  Indeed, on the facts as we

have found them, she could not do so, for search and seizure of one's person predicated upon

---

[14] Plaintiff's allegations in support of her claims of intentional and negligent infliction of
emotional distress are indistinguishable and state that

> [the Town Defendants] were grossly negligent in their conduct as complained of
> herein, were negligent and grossly negligent in their conduct in failing to take steps
> that an ordinary, reasonable and prudent person and/or officer would have pursued
> to care and protect [p]laintiff. . . . [The Town Defendants] engaged in a cover-up in
> order to conceal the wrongdoing and unlawful conduct taken against [p]laintiff . . .
> .

(Am. Complt. ¶¶ 72-73.)

probable cause to believe that a crime had been committed in no way offends a civilized society's sense of justice.

Similarly, a claim for negligent infliction of emotional distress also requires a showing of "extreme and outrageous conduct, which so transcends the bounds of decency as to be regarded as atrocious and intolerable in a civilized society," *Dillon*, 261 A.D.2d at 41, which, because of our finding of probable cause, cannot be met in the present case.  Furthermore, plaintiff has alleged neither that she suffered physical injury nor that the Officers' conduct put her at risk or in apprehension of physical injury.

> Although physical injury is no longer a necessary component of a cause of action to recover damages for the negligent infliction of emotional distress . . . [t]he circumstances under which recovery may be had for purely emotional harm are extremely limited and, thus, a cause of action seeking such recovery must generally be premised upon a breach of a duty owed directly to the plaintiff which either endangered the plaintiff's physical safety or caused the plaintiff fear for his or her own physical safety . . . .

*Lancellotti v. Howard*, 155 A.D.2d 588, 588, 547 N.Y.S.2d 654 (2d Dep't 1989).  Even assuming that one or more of the Town Defendants owed a duty to plaintiff, she cannot claim that at any time she feared for her physical safety as a result of the Officers' actions.  Plaintiff's interaction with police took place within the confines of the hospital with a nurse present.  (Sweeney Aff. at 2-5.) The Officers interacted with plaintiff only briefly and in a non-threatening manner.  Such interaction, which goes no further than normal police procedure in investigating a potential crime, cannot satisfy the harm requirement of a negligent infliction of emotional distress claim.  In any event, as stated previously, our finding of probable cause to justify the Officers' actions eviscerates plaintiff's claim. Plaintiff's subjective feelings of emotional distress cannot preclude law enforcement personnel from carrying out their duties in a manner consistent with the United States Constitution.

**H.**   *Prima Facie* **Tort**

The New York Court of Appeals has recognized a cause of action sounding in "*prima facie* tort," in which a plaintiff must demonstrate: "(1) intentional infliction of harm, (2) resulting in special damages, (3) without excuse or justification, and (4) by an act or series of acts that would otherwise be lawful . . . ." *Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314, 332, 451 N.E.2d 459, 464 N.Y.S.2d 712 (1983).  Although it may be pleaded in the alternative, *prima facie* tort is not a "catch-all alternative for every cause of action which cannot stand on its own legs." *Curiano v. Suozzi*, 63 N.Y.2d 113, 118, 469 N.E.2d 1324, 480 N.Y.S.2d 466 (1984).  In the present case, plaintiff has failed to satisfy at least two of the aforementioned elements.

Assuming plaintiff could demonstrate that the Officers acted with the intent to harm plaintiff, she still has failed to set forth the requisite showing of special damages.  Although special damages are ill-defined by New York courts, it is clear that "[s]pecial damages must be alleged with sufficient particularity to identify *actual losses* and be related causally to the alleged tortious acts . . . .  They must be fully and accurately stated." *Lincoln First Bank of Rochester v. Siegel*, 60 A.D.2d 270, 280, 400 N.Y.S.2d 627 (4th Dep't 1977).  Plaintiff, rather than detailing specific economic losses, merely concludes that, as a result of the Officers' actions, she suffered losses "believed to be in excess of [two million dollars]." (Am. Complt. ¶ 88.)  Furthermore, our finding of probable cause undermines the third element, as the Officers were justified in detaining plaintiff and obtaining a blood sample.  Having found probable cause, we decline to scrutinize the Officers subjective motivation for making the search and seizure. *See Whren v. United States*, 517 U.S. 806, 814 (1996) ("[T]he Fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain circumstances, *whatever* the subjective intent.") (emphasis in original).  Plaintiff's *prima facie* tort

claim must therefore also fail.

## II.    Defamation

Finally, we turn to plaintiff's claim that all defendants defamed her when they reported and, in the case of the Newspaper, published that plaintiff had been driving while intoxicated.  The Town Defendants do not specifically respond to plaintiff's defamation claim, but merely argue that all of her state law claims are meritless.  The Newspaper, for its part, argues only that N.Y. CIV. RIGHTS LAW § 74 grants it immunity from suit for defamation.  None of the parties acknowledges the proverbial elephant in the corner: the potential protection afforded defendants under the First Amendment.  Likewise, we also decline to address the issue and, having concluded that summary judgment must be granted on plaintiff's federal claims, decline to exercise supplemental jurisdiction over plaintiff's remaining state law defamation claim.[15]

The United States Supreme Court has emphasized that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.  Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."  *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *see also Giordano v. City of New York*, 274 F.3d 740, 754-55 (2d Cir. 2001) (ruling on supplemental state law claim after dismissing related federal claim constituted abuse of discretion).  Accordingly, 28

---

[15] Plaintiff's Amended Complaint states that she is a resident of Putnam County, New York (*see* Am. Complt. ¶ 3) and she has not alleged that she is a citizen of another state.  Defendants are also citizens of the State of New York and, accordingly, there is no diversity jurisdiction pursuant to 28 U.S.C. § 1332.

U.S.C. § 1367 provides that, although federal courts may exercise jurisdiction over state law claims comprising part of the same case or controversy that gives rise to a claim under federal law, "[t]he district [court] may decline to exercise supplemental jurisdiction over a claim . . . if . . . [it] has dismissed all claims over which it has original jurisdiction . . . ."

Unlike our analysis of plaintiff's other state law claims, all of which implicated our determination that probable cause supported plaintiff's detention and the seizure of her blood, plaintiff's defamation claims raise pure issues of New York tort law.  Although, as we have indicated, plaintiff's defamation claims have potential First Amendment repercussions, the existence of a potential federal defense does not trigger federal question jurisdiction pursuant to 28 U.S.C. § 1331. *See Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152-53 (1908).  Additionally, the Newspaper's defense requires consideration of a specific New York statute addressing the right of published media to rely on reports from governmental agencies, which entails detailed consideration of significant issues of New York law.  Thus, for prudential reasons, we should not exercise jurisdiction over this wholly-state-law claim, and we decline to address its merits.  *See, e.g., Seabrook v. Jacobson*, 153 F.3d 70, 73-74 (2d Cir. 1998) (exercise of jurisdiction over state law claim when all federal claims had been dismissed constituted abuse of discretion); *Rounseville v. Zahl*, 13 F.3d 625, 631 (2d Cir. 1994) (resolution of novel issue of state law was abuse of discretion where all federal claims had already been dismissed);  *Morse v. Univ. of Vt.*, 973 F.2d 122, 127-28 (2d Cir. 1992) (same).

## CONCLUSION

For all of the foregoing reasons, the motion of defendants, the Town of Carmel, the Town

19

of Carmel Police Department (the "Department"), Lieutenant Brian Karst, Sergeant Kenneth Schmitt, Officer Paul O'Connor and seven unidentified officers of the Department (collectively, the "Town Defendants") and The Journal News for summary judgment is granted. Plaintiff's claims against the Town Defendants sounding in: (1) conspiracy to violate her constitutional rights in violation of 28 U.S.C. § 1983; (2) false arrest, unlawful search and seizure and malicious prosecution in violation of 28 U.S.C. § 1983; (3) "supervisory liability and failure to intercede" in violation of 28 U.S.C. § 1983; (4) infringement of plaintiff's First and Fourteenth Amendment rights in violation of 28 U.S.C. § 1983; (5) conspiracy to interfere with plaintiff's "rights and privileges and equal protection of the law" in violation of 28 U.S.C. § 1985; (6) failure to screen, hire, train and supervise officers in violation of 28 U.S.C. § 1983; (7) negligent and intentional infliction of emotional distress in violation of New York State law; (8) "respondeat superior"; (9) false arrest and imprisonment; (10) *prima facie* tort in violation of New York State law; and (11) negligent hiring in violation of New York State law; *i.e.*, those contained in Counts I-XI of plaintiff's complaint, are dismissed with prejudice. Plaintiff's claims against defendants for defamation are dismissed without prejudice for lack of subject matter jurisdiction.

SO ORDERED.

Dated: White Plains, New York
        January 17, 2007

william C. Conner

Sr. United States District Judge

20